UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:08CR419 CAS |
| JOHN T. HENRY, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Pending before the undersigned is Defendant's Motion to Suppress Evidence and Statement [Doc. #20]. A hearing on the Defendant's motion was held on February 23, 2009. Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Lucas Wicks is a detective with the Lincoln County Sheriff's Office. On April 19, 2008, he was assigned to investigate burglary, stealing, and crimes against persons which occurred in Lincoln County. On April 19, 2008, he prepared applications and affidavits to search the premises at 619 Highway E in Silex, Missouri, and 266 Woods Road in Silex, Missouri. After preparing the applications and affidavits, he took them to the Lincoln County prosecutor's office where they were reviewed by Assistant Prosecuting Attorney George Gundy. After Gundy approved the applications and affidavits, Wicks went before Judge Kinker of the Lincoln County Circuit Court, and swore to

the accuracy of the affidavits to search the above premises. The affidavit in support of the application to search 266 Woods Road in Silex, Missouri, read in pertinent part as follows[1]:

On April 19, 2008, Deputy Wicks and other members of the Lincoln County Sheriff's Office were informed of the theft of a 1940 green Chevrolet station wagon, which was taken from the residence of Michael Schaper at 944 Linns Mill Road in Troy, Missouri. Schaper told the sheriff's deputies that on April 19, 2008, Schaper observed a truck which belonged to Henry Concrete Company driving in the area of his residence. On the back of this concrete "boom truck" Schaper observed his Chevrolet station wagon. Schaper had not given anyone from Henry Concrete permission to remove the vehicle from his premises, and when he checked with the company who had asked to remove the vehicle, they had stated they had not moved the vehicle or given anyone permission to move the vehicle. Schaper contacted the Lincoln County Sheriff's Office and reported the vehicle stolen. Also, on April 19, 2009, deputies from the Lincoln County Sheriff's Department went to the premises of Henry Concrete Company which is located at 619 Highway E in Silex, Missouri. At this premises, the deputies contacted an employee of Henry Concrete, and while speaking with this employee the deputies observed in plain view on the premises of Henry Concrete, Schaper's green Chevrolet station wagon, which they then observed to be on the back of a Henry Concrete "boom truck." The deputies asked the employee who was last driving this truck, and the employee told them that one of the owners of Henry Concrete, John Henry had last driven the truck,

---

[1] Wicks also applied at the same time for a warrant to search the premises of Henry Concrete Company, 619 Highway E, Silex, Missouri. This warrant was also issued by Judge Kinker on April 19, 2008. The warrant to search the business authorized the search of the 1940 Chevrolet station wagon vehicle and the keys to the vehicle. The firearms which are the only subject of this prosecution, however, were not found at this premises but at 266 Woods Road, which is on the same property as Henry Concrete.

2

and that Henry was currently located at 266 Woods Road in Silex, Missouri. The deputies went to contact Henry at his address because they believed, since he was the last driver of the "boom truck" with the stolen car on it, he may be in possession of keys to the vehicle as well as other items from the stolen vehicle. When deputies went to the Defendant's residence at 266 Woods Road in Silex, Missouri, they noted it was located on the same property as Henry Concrete, and was connected by a gravel road. They attempted to contact Henry at the residence, however, they weren't able to do so even though they noted that Henry's pickup truck was parked in the driveway, and that Henry was last seen by an employee leaving Henry Concrete in the pickup truck. Further, they observed in plain view in an outbuilding on the property a freshly painted tractor similar to a description of a stolen tractor taken from 3129 Highway B in Ellsberry, Missouri. The tractor was painted blue.

Based on the above affidavit, Judge Kinker issued a warrant to search the property and seize keys, tractors, ATVs, and tools used to aid in disassembling of vehicles.

After receiving the warrants, Wicks went first to the business premises and contacted a deputy sheriff who had secured the business premises. He then proceeded to execute the search warrant, discovering the stolen automobile, and other items which he believed to be stolen in prior incidents. No keys were found to the vehicle nor apparently was any equipment discovered with which the vehicle could be dismantled. Wicks then proceeded to 266 Woods Road to execute that search warrant. When he arrived, the Defendant was at the scene. He informed the Defendant that he had a warrant to search his premises for the stolen property and determined that the Defendant did not wish to make any statements to him. He then executed the warrant, and while executing the warrant, discovered in plain view in the garage area of the premises three firearms; one .12 gauge shotgun, one deer hunting rifle, and one .22 long rifle. Because he knew the Defendant was a convicted felon and

could not have these firearms, he seized the weapons as potential evidence. Wicks stated that although he was unaware exactly how the car was stolen, he believed that keys would have been in the car or possibly used to steal the car. The Defendant's father, an employee of the concrete company and the Defendant's niece also testified at the hearing. They testified that the blue Ford tractor, which Wicks believed was stolen, was not located on the premises at 266 Wood Roads, but was located on the business premises at 619 Highway E. They testified that the tractor belonged to the Defendant's father, and had not been stolen. During the execution of the search warrant, Wicks also determined that the vehicle had not been stolen.

## Conclusions of Law

A. The Search Warrant

The Defendant first challenges the validity of the search warrant under the rationale of Franks v. Delaware, 438 U.S. 154 (1978). To succeed in a Franks type challenge to the validity of the search warrant, the Defendant must establish that the affiant either knowingly and willfully or with reckless disregard for the truth, included a false statement within the warrant affidavit. Mere negligence or innocent mistake is insufficient to void a warrant. See Franks, 438 U.S. at 156.

In United States v. Stevens, 530 F.3d 714 (8th Cir. 2008), the Court stated as follows in quoting the standard to be used in determining whether a statement is knowingly false or reckless:

> An affiant knowingly and intentionally or recklessly includes a false statement if he "in fact entertain[s] serious doubts as to the truth of the affidavit or ha[s] obvious reasons to doubt the accuracy of the information contained therein." United States v. Clapp, 46 F.3d 795, 801 (8th Cir. 1995) (adopting the First Amendment libel standard for Franks inquiries). Inaccurate statements that result from negligence or innocent mistake are insufficient to trigger relief under Franks. 438 U.S. at 171, 98 S.Ct. 2674.

530 F.3d 714, 718.

In concluding the fact that inaccurate statements in the affidavit about the defendant's criminal record did not reach the level of knowingly false or reckless, the Court stated as follows:

> We conclude that probable cause existed to issue the warrant to search Stevens's residence and that the district court did not clearly err in finding that the affiant officer did not knowingly or recklessly include a false statement in the affidavit...
>
> . . .
>
> With respect to the Franks challenge, we agree with the district court's conclusion that the affiant officer was at most negligent in including inaccurate information regarding Stevens's criminal history in the affidavit. The affiant officer testified at the Franks hearing about the process he followed in preparing the affidavit, enabling the magistrate judge to assess his credibility. . .The magistrate judge found that the affiant officer had "hastily gathered" the information from multiple sources late at night. See id, (the synthesis of information from multiple sources may account for errors). We note that the information on Stevens's criminal history came from two states and the Federal Bureau of Investigation and that its complexity understandably resulted in the inaccuracies described above. . .

530 F.3d 714, 719, 720.

Likewise, in United States v. Clapp, 46 F.3d 795 (8th Cir. 1995), the district court determined that two inaccurate statements made by the affiant in the affidavit, although misleading and wrong, did not rise to the level of Franks violations. In so holding, the Court stated as follows:

> Clapp argues that Tweedy's statement that he "participated" in an interview with Smith is false, since Tweedy only overheard portions of the interview while tending to other work across the room behind a five-foot partition. He also claims the statement that Smith "didn't know where the remaining $329,600.95 went" is directly contrary to information in the report DiPrima wrote on his interview with Smith.
>
> Tweedy's statement that he participated in the interview with Smith was misleading and inappropriate. Tweedy overheard the interview from his desk fifteen to twenty feet away and was working on unrelated matters at the time. In addition, his statement that Smith did not know where the remaining money went was plainly inaccurate, since Smith told DiPrima that he received a check for the full $1,250,000, which he endorsed, and that separate checks were then issued for $920,399.05 in Smith's name and the balance in Clapp's name. All of this information was included in DiPrima's report on his interview with Smith.
>
> Notwithstanding that Tweedy's statements were inaccurate, we do not believe that they were deliberate falsehoods or made with reckless disregard for the truth...

5

. . .

> . . .Under this definition, neither Tweedy's statement about having participated in Smith's interview nor his failure to precisely report the details of Smith's interview with DiPrima constitutes reckless disregard for the truth; both, rather, evince negligent conduct. Tweedy's statement that he participated in the Smith interview was misleading and, thus, was negligent; it was not reckless, however. Similarly, his statement that Smith did not know where the remaining money went was more the product of carelessness than recklessness. Had Tweedy admitted to having read DiPrima's report yet nevertheless included in the affidavit that Smith did not know where the remaining money went, there might be grounds for concluding that Tweedy acted in reckless disregard for the truth. Tweedy, however, testified only that he thought the statement was made sometime during DiPrima's interview with Smith.

United States v. Clapp, 46 F.3d 795, 799, 800, 801.

Given the above law, the undersigned concludes that the statements made in the affidavit were not intentionally false or recklessly made. The statement in the affidavit alleged to be false or inaccurate is in substance that "deputies" responded to 266 Woods Road in Silex, Missouri which is located on the same property and connects to 619 Highway E by a gravel road, and that when deputies arrived at the residence, they observed in plain view a freshly painted tractor which was similar in description to a stolen tractor from Highway B in Ellsberry, Missouri, and that the tractor was painted blue. At the hearing in this matter, the Defendant's father testified that the blue tractor was owned by him, and was being painted at Henry Concrete at the 619 Highway E premises, and was not located at 266 Woods Road, the attached property. An employee of Henry Concrete, likewise testified that the blue tractor was at 619 Highway E, and was not at 266 Woods Road. The Defendant's father testified that there was at times a different tractor parked at his son's residence at 266 Woods Road also owned by the father. Deputy Wicks testified that he was preparing the affidavit for the search warrant at the office, and was at times depending on other deputies for information which he included in the affidavit. Specifically, as to location of the tractors, he stated

as follows: "As I indicated in here, I was initially basing my affidavit for the search warrants based upon observations of Lt. Kurt Veneman as well as Deputy Christy maintaining security at both of those areas." Tr. at 23. Wicks also testified unequivocally that he believed that the blue tractor was located at 266 Woods Road and believed so at the time the affidavit was sworn to and believed so at the time of the hearing. He stated that he recalled seeing it at 266 Woods Road on the day of the search.

Given the above, the undersigned concludes that there is no evidence that Wicks included a false statement in his affidavit either knowingly and willfully or recklessly. Everyone agrees that the blue tractor was in existence and was being painted on the day that the search warrant was executed. Two of the Defendant's witnesses testified that the tractor was at 619 Highway E, while Wicks was informed apparently by the lieutenant that the tractor was at 266 Woods Road. There is no indication that there was any intent on either the lieutenant's part or Wicks's part to place a false statement in the affidavit or that they recklessly did so. Information was being gathered by third parties as in Stevens supra, and relayed to Wicks. If indeed a mistake was made as to the location of the tractor, there is no evidence that it was willful or reckless, but at the most negligent. In addition, the undersigned has observed the demeanor of Deputy Wicks while testifying on the stand, and observed him to be forthcoming and candid in his responses to questions asked by the Defendant's attorney and the prosecutor. The undersigned concludes that Wicks was a very credible witness, and that Wicks believed that the affidavit was truthful at the time he swore to it, and to this date believes that he saw the tractor at 266 Woods Road. Therefore, the Defendant's Franks challenge must fail.

Further, even if the information about the blue tractor is deleted from the affidavit, the undersigned concludes that the remaining facts support a reasonable probability that evidence of

7

criminal activity would be found in the areas that were searched. The undersigned concludes that the adjusted affidavit provides a substantial basis from which the issuing court could have determined probable cause. Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Whether probable cause has been established involves the practical common sense evaluation of the totality of the circumstances. Gates, 462 U.S. at 238.

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

Brinegar v. United States, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Illinois v. Gates, at 632. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched. See Illinois v. Gates, supra. Also, affidavits should not be read in a hypertechnical manner. See United States v. Ventresca, 380 U.S. 102 (1965).

Given the above, the undersigned concludes that there is sufficient probable cause to search the premises of the Defendant and the outbuildings for any evidence which might exist concerning the stolen vehicle which was observed and positively identified on the same piece of land as the place

of business as 619 Highway E. The affidavit revealed that the vehicle had been stolen on April 19, 2008, and was observed on a "boom truck" belonging to the Defendant. Deputies of the Lincoln County Sheriff's Office observed the stolen vehicle on the same "boom truck" at the business premises also on April 19th, evidently a short time after it had been reported stolen. While interviewing individuals on those premises, they were told that the Defendant John Henry had driven the "boom truck" to the premises, had exited the "boom truck," entered his pickup truck which he drove to his premises located on the same property as the business premises. Given all of the above, including the fact that the keys to the vehicle had not been recovered (if there were keys), and that other items might have been taken from the vehicle that could be found on the premises as well as equipment used to dismantle the vehicle, the undersigned concludes that there was at least a "fair probability" that items relating to the stolen car could be found on the residential premises of the Defendant a short time after the theft of the vehicle. Therefore, probable cause existed to search the Defendant's house and outbuilding.

Further, while evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. See United States v. Leon, 468 U.S. 897, 920, 921 (1984). There are four circumstances which exist in which the Leon good faith exception does not apply. They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers can not reasonably presume it to be valid."

9

United States v. Guzman, 507 F.3d 681, 685 (8th Cir. 2007).  See also Leon, 468 U.S. 897 at 832.

Further, in United States v. Grant, 490 F.3d 627 (8th Cir. 2007), the Court stated as follows in dealing with the good faith exception:

> Under the Leon good faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. . . In assessing whether the officer relied in good faith on the validity of the warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit. . .and we confine our inquiry "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization" . . .

United States v. Grant, 490 F.3d 627, 633 (8th Cir. 2007).  See also, United States v. Guzman, supra.

Based on the above, the undersigned concludes that the officers relied on the warrant in this case and objective good faith.  First, the undersigned concludes pursuant to the analysis stated above in the section relating to the Franks challenge, the magistrate was not misled by any misstatements made by the affiant that were in reckless disregard for the truth.  Indeed, as stated above, Deputy Wicks believed at the time that his affidavit was truthful and still believes that his affidavit is truthful. That other people may believe that he was mistaken does not mean that he acted in reckless disregard for the truth, particularly when one takes into consideration that he was relying on other deputies' observations at the time the affidavit was filed.  As to whether or not the affidavit was so lacking in indicia of probable cause or was so facially deficient that neither the executing officers nor the judge could believe it was valid, the undersigned concludes that the affidavit was more than sufficient to meet the standard under Leon with or without the blue tractor being included in the affidavit.  As stated above, it is undisputed that the vehicle in question had been recently stolen, and was observed after its theft on the premises of the Defendant at 619 Highway E.  Further, the Defendant was

identified having driven the truck with the stolen vehicle on it to 619 Highway E, and then going to his premises in his pickup truck. The pickup truck was at the premises a short time later. Therefore, both the officer and the judge could reasonably believe that evidence from the theft of the vehicle, including whatever was left inside of the vehicle, as well as tools and utensils used to steal and dismantle the vehicle, and the keys to the vehicle could be found at the Defendant's house and outbuilding. Further, the officer acted reasonably in attempting to obtain the warrant, and went to the prosecuting attorney and obtained the prosecuting attorney's advice and approval prior to taking the warrant to the judge. Therefore, the undersigned concludes that the warrant and affidavit were also sufficient under Leon standards.

In addition, the undersigned concludes that firearms were seized in plain view while the officers were validly executing the warrant. An example of the plain view doctrine occurs when officers are executing a lawful warrant, find incriminating evidence not detailed in the search warrant. As long as this other evidence is discovered while the officers are searching areas in which the named items can be concealed, the first element of plain view doctrine is met, that is, that the agent or officer is lawfully at the place where the property can be plainly observed. In so holding, the Supreme Court stated as follows, in Horton v. California:

> "An example of the applicability of the 'plain view' doctrine is a situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."

Horton v. California, 496 U.S. 128, 135 (1990) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 465-66 (1971)). A second element of the plain view doctrine is that the incriminating nature of the object to be seized must be "immediately apparent" to the officer viewing the object. The seminal

11

case in defining the meaning of "immediately apparent" is Texas v. Brown, 460 U.S. 730 (1983). In defining "immediately apparent," the Court stated as follows:

> But the Court of Criminal Appeals, as we have noted, felt the state's case ran aground on the requirement that the incriminating nature of the items be "immediately apparent" to the police officer. To the Court of Appeals, this apparently meant the officer must be possessed of near certainty as to the seizable nature of the items. Decisions by this Court since Coolidge indicate the use of the phrase "immediately apparent" was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the "plain view" doctrine.
>
> . . .
>
> Plainly the court did not view the "immediately apparent" language of Coolidge as establishing any requirement that a police officer "know: that certain items are contraband or evidence of a crime. Indeed, Colorado v. Bannister, supra, was merely an application of the rule, set forth in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that "[t]he seizure of the property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity*." Id. at 587, 100 S.Ct at 1380 (emphasis added). We think this statement of the rule from Payton, supra, requiring probable cause for seizure in the ordinary case, is consistent with the Fourth Amendment and we reaffirm it here.

Texas v. Brown, 460 U.S. 730, 741, 742.

Given the above, the undersigned concludes that the seizure of the three firearms was lawful. According to the search warrant, the agents could search for keys for the stolen vehicle, other items used to dismantle the stolen vehicle, or the tractor. The guns were found in plain view as soon as the agents entered the garage area sitting on top of an ATV. Thus, the keys, the stolen tools, and the tractor could be found in the garage. Therefore, the guns were observed during the course of lawfully executing the warrant. In addition, the officers were aware that the Defendant was a convicted felon, and that it was a crime for him to possess the firearms. Therefore, it was immediately apparent to them within the meaning of Texas v. Brown, that the firearms were evidence of a crime. Therefore, the items were lawfully seized.

Finally, the Defendant alleges that the warrant itself is overly broad and amounts to a fishing expedition because the keys and tools and tractor are not further identified in the warrant. The undersigned notes that the judge in issuing the warrant referred to the affidavit in this case which she stated was attached to the warrant. Because the warrant is attached to the affidavit, the affidavit may be considered in determining the particularity of the warrant. In so holding, the Court stated as follows in United States v. Gamboa, 439 F.3d 796 (8th Cir. 2006):

> . . ."[a]n affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant."

United States v. Gamboa, 439 F.3d at 807. See also, United States v. Bianco, 998 F.2d 1112 (2nd Cir. 1993). The undersigned concludes that reading the affidavit makes it apparent that the keys to be seized are keys to the 1940 Chevrolet, and the tools to be seized are tools that could be used to dismantle the stolen 1940 Chevrolet automobile. In addition, the affidavit, when read in context, states that the blue stolen tractor was located in an outbuilding in plain view with the door to the outbuilding open. See ¶ 6, Affidavit in Support of the Warrant to Search 266 Woods Road. Therefore, the undersigned concludes that the warrant is sufficiently particular.

Based on all of the above, the undersigned concludes that the evidence seized from the premises should not be suppressed.

## Conclusion

Therefore, the Defendant's Motion to Suppress Evidence and Statement [Doc.#20] should be **denied**.

* * *

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statement [Doc. #20] be **denied**.

Further, the parties are advised that they have until April 2, 2009, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

/s/ Terry I. Adelman<br>
UNITED STATES MAGISTRATE JUDGE

Dated this  23rd  day of March, 2009.